IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

BOBBY KIMBLE,

              Plaintiff

v.

GARY BOUGHTON, PETER JAEGER,
LARRY FUCHS, CATHY JESS, MARC
CLEMENTS, DOUG PERCY, BRAD HOMPE,
CINDY O'DONNELL, EMILY DAVIDSON,
DR. MORLENA LARSON, DR. ANDREW
SIMCOX, KARTMAN, DR. HOEM, DR. SCHWENN,
DICKMAN, MS. MINK, BROOKS, PERSCHBACHER,
OFC. MCDANIEL, OFC. HUNT, OFC. SCOTT MEYER,
BROADBENT, GARDNER, and L. BROWN,

              Defendants.

OPINION AND ORDER

Case No. 19-cv-1011-slc

_____

      In June of 2016, pro se plaintiff Bobby Kimble was transferred to the Wisconsin Secure Program Facility (WSPF) after he assaulted a female correctional officer at Waupun Correctional Institution in October 2015. This is Kimble's third lawsuit challenging conditions of his confinement since his arrival at WSPF. The parties have consented to magistrate judge jurisdiction, and on March 4, 2020, this case was assigned to me. As in his two previous lawsuits, Kimble claims that the defendants have violated, and continue to violate his First, Eighth and Fourteenth Amendment rights by keeping him on Administrative Confinement (AC) status at the Wisconsin Secure Program Facility (WSPF). In his first two lawsuits, Kimble named as defendants the WSPF employees directly involved in his placement on AC status. In this lawsuit, Kimble also names those same WSPF employees but he has added many additional WSPF and Wisconsin Department of Corrections employees who had very limited or no direct involvement in Kimble's AC status placement. On July 27, 2020, Kimble submitted a motion to amend his complaint and a proposed amended complaint. (Dkts. 13, 14.) That motion is granted.

I have reviewed Kimble's amended complaint as required by 28 U.S.C. § 1915A. Since it appears that Kimble's proposed amended complaint is almost completely duplicative of his other lawsuit that he currently is litigating in this court, *See Kimble v. Boughton*, No. 19-cv-645-slc, I am dismissing this lawsuit. If Kimble wishes to pursue claims against additional individuals related to his confinement at WSPF since 2016, then he will need to seek leave to amend his complaint in the '645 case.

## RELEVANT BACKGROUND

### A.   Kimble's Related Lawsuits

Kimble filed his first lawsuit challenging his continued assignment to AC status in 2017, *Kimble v. Kartman*, No. 17-cv-689-slc (W.D. Wis. filed September 6, 2017). In that complaint, Kimble named as defendants WSPF employees Boughton, Kartman, Brown, Dr. Hoem, Gardner, Dickman, Winkieski, Boughton, and Mink. Kimble sought leave to proceed on First, Eighth, and Fourteenth Amendment claims related to his placement on AC and his inability to get attention for his mental health needs. At screening, I granted Kimble leave to proceed against Dr. Hoem for her alleged deliberate indifference to his mental health needs, but denied leave to proceed on Eighth Amendment conditions of confinement and Fourteenth Amendment due process and equal protection claims. *Id.*, dkt. 21. Kimble filed a proposed amended complaint that included more specific allegations related to Boughton's alleged retaliation against him. I allowed him to proceed against Boughton on that claim, dkt. 21, but then Kimble voluntarily dismissed that claim. All of Kimble's voluntary dismissals in that lawsuit ended up being

without prejudice. *See id.*, dkts. 36, 44. On August 26, 2019, I granted defendant Hoem's motion for summary judgment, entering judgment in her favor. *Id.,* dkt. 58.

Second, in 2019, Kimble filed *Kimble v. Boughton*, 19-cv-645-slc, also challenging his initial and continued assignment to AC. Kimble named six WSPF employees as defendants: Boughton, Kartman, Gardner, Dickman, Winkieski, and Mink. His allegations in that lawsuit span from June of 2016 through May of 2019 and cover his initial placement on AC status when he arrived at WSPF. Kimble challenged each of his AC placement decisions between that time and May of 2019, claiming that he should have advanced out of AC status and into general population at WSPF because he had not been disciplined since the October 2015 assault and he had completed all of the required programming. Kimble claims that the defendants' review of his status violated his due process rights because they did not perform an actual review of whether he should remain in the more restrictive AC status. Relatedly, Kimble claims that Boughton was retaliating against him for complaining about his placement and pursuing his 2017 lawsuit, in violation of his First Amendment rights.

In the '645 lawsuit, Kimble's closing allegations were that in May of 2019, defendant Warden Gary Boughton had recruited a psychologist to opine about whether it would be appropriate to allow Kimble to advance out of AC status and into general population. Kimble claimed that Boughton recruited the psychologist, Dr. Andrew Simcox, to help create a false narrative that Kimble continued to be a threat to prison security, thus justifying his continued placement on AC. I granted Kimble leave to proceed on First Amendment retaliation claim against defendant Boughton, on the theory that Boughton has been keeping Kimble on AC to punish him for filing his 2017 lawsuit and pursuing inmate complaints in 2018. *Id.*, dkt. 17 at

13-14. I also granted Kimble leave to proceed on Fourteenth Amendment due process claims against defendants Dickman, Mink, Gardner, Winkeistki, and Kartman, on the theory that these defendants' review of Kimble's status throughout 2017 was perfunctory, and against Boughton for his review of Kimble's status between 2017 and 2019. *Id.* at 16-17. Kimble is seeking both monetary damages and injunctive relief related to his placement and status. *Id.*, dkt. 15 at 24-25. The parties in that case are taking discovery phase, with dispositive motions due in January of 2021.

### C. Kimble's Proposed Claims in this Lawsuit

Kimble remains as WSPF, and in this lawsuit also seeks to bring First, Eighth, and Fourteenth Amendment claims related to his continued placement on AC. Kimble's amended complaint is substantially more detailed than the complaint he is proceeding upon in his '645 case – the amended complaint is 58 pages long and adds 18 defendants. In addition to Boughton, Kartman, Gardner, Dickman, Winkieski, and Mink, Kimble adds: Peter Jaeger, a deputy warden at WSPF; Larry Fuchs, a security director; Cathy Jess, Office of the DOC's Secretary; Marc Clements, Assistant DAI Administrator; Doug Percy, Assistant DAI Administrator; Brad Hompe and Emily Davidson, Corrections Complaint Examiners (CCEs); Cindy O'Donnell, of the Office of the DOC's Secretary; Dr. Morlena Larson, a DOC psychologist supervisor; Dr. Andrew Simcox, WSPF's psychological service unit (PSU) supervisor; Dr. Schwenn; Brooks; Perschbacher; and Officers McDaniel, Hunt, and Meyer; L. Brown, a unit manager; and Broadbent. However, Kimble's claims are essentially the same as the claims he outlined in his '645 case, namely that his advancement through the High Risk

4

Offender Program (HROP) and PACE program has been unconstitutionally held up by Boughton, Kartman, Gardner, Dickman, Winkieski, and Mink.

While in the '645 case Kimble's claims focused on those defendants' involvement in his AC placement between 2016 and May 2019, in the instant lawsuit Kimble includes additional allegations related to the new defendants' involvement in his AC placement, which I will briefly summarize:

First, Kimble appears to be challenging the AC hearing that occurred in June 2016, arising from the charge that he assaulted a prison guard at Waupun in October 2016. He claims that Broadbent, the hearing officer, mishandled this hearing by not allowing Kimble to present certain witnesses. (Am. Compl. (dkt. 14) ¶¶ 7-15.) Kimble also claims that Officer Hunt, who appears to have been involved in his AC placement, was not a part of security and should not have been involved in Kimble's status determination.

Kimble also challenges the review of his AC placement six months later, in December of 2016, faulting Broadbent and Dr. Hoem for finding that he remained a danger, even though he had not had a disciplinary charge since October of 2015, and he had been participating in programming intended to advance him out of AC status. Kimble further faults Broadbent's handling of his AC hearings in December 2016, November 2017, May 2018, November 2018, January 2019, also because Broadbent did not grant his request to have certain witnesses present for the hearing. (*Id.* ¶¶ 39-41, 63-72, 85, 114, 122-23.) Kimble claims that McDaniel and Mink also were involved in the November 2018 hearing process and inappropriately concluded that he still presented a danger to the general population at WSPF. Kimble further claims that Schwenn and McDaniel were involved in his January 2019 placement decision, but that

5

Broadbent failed to read them Kimble's statement in support of his removal from AC. (*Id.* ¶ 125.)

Kimble includes some allegations related to his efforts to appeal the decisions about his AC placement. In particular, he faults defendants Hompe and Jess for dismissing his challenge to the June 22, 2016, AC decision (*id.* ¶¶ 29); he claims that he raised procedural errors to DAI Administrator Clements with respect to the December 2017 AC hearing, including his assertion that defendant Meyer should not have been part of the committee deciding his placement (*id.* ¶¶ 77); Kimble claims that he appealed the results of his January 2019 hearing to the DAI Administrator, and Percy affirmed the WSPF officials' decision to keep him on AC status (*id.* ¶¶ 143-44); and he challenges Hompe's, O'Donnell's, and Davidson's handling of Kimble's inmate complaints challenging Boughton's use of Dr. Simcox's report (*id.* ¶¶ 188-194).

Finally, Kimble includes allegations related to his continued placement in administrative confinement that have occurred since May of 2019. In particular, Kimble claims that Dr. Simcox falsified the report that Boughton had requested by claiming that Kimble had attempted to form a sexual relationship with the guard Kimble had attacked in 2015. Kimble claims that this is false and that Boughton used this false report to keep Kimble on AC status. Kimble adds that Deputy Warden Jaeger also wrote that Kimble had a "sexually violent history within the DOC," which apparently contributed to his continued AC placement. (*Id.* ¶ 179.) Kimble claims that both Boughton and Jaeger submitted false information to the office of Larry Fuchs, causing Fuchs to agree that Kimble's continued placement on AC status was appropriate. Kimble also claims he complained to the head of psychological services, Dr. Morlena Larson, about Dr. Simcox's falsified report, but Dr. Larson agreed with Dr. Simcox's report. (*Id.* ¶ 195.)

Kimble adds that several WSPF officials–including defendants Mink, Gardner, Dickman, Perschbacher, and Kartman–have recommended that he advance out of AC and into general population, but those recommendations have been ignored.

Kimble's proposed claims in this lawsuit remain the same: that his Fourteenth and Eighth Amendment rights are being violated due to his continued placement on administrative confinement, and that Boughton has been retaliating against him for filing lawsuits against him and complaining about his confinement, in violation of his First Amendment rights.

OPINION

Federal courts may dismiss a suit "for reasons of wise judicial administration whenever it is duplicative of a parallel action already pending in ... federal court." *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976)). The determination is discretionary, and district courts are given latitude to exercise that discretion, but generally, a suit will be considered duplicative if the claims, parties, and relief requested do not significantly vary between the actions. *McReynolds v. Merrill Lynch Co. Inc.*, 694 F.3d 873, 888-89 (7th Cir. 2012).

The claims and relief Kimble is pursing in the '645 case are identical to the claims that Kimble seeks to pursue in this case. Therefore, the question is whether Kimble's additional parties and allegations makes this lawsuit sufficiently distinct that it should proceed separately. In these circumstances, because Kimble's amended complaint in this lawsuit suggests very little possibility for independent claims, I find that the most efficient use of the court's and parties' resources will be for Kimble to pursue those claims by seeking leave to amend in his '645 case.

The majority of the Kimble's new defendants were not sufficiently involved in Kimble's proposed claims to warrant allowing him to proceed in this lawsuit separately. Defendants Hoem, Hunt, Meyer, Brown, Perschbacher, McDaniel, Brooks and Schwenn had little or no involvement in the events related to Kimble's proposed constitutional claims. Rather, it appears that Kimble named them as defendants because they either may have sat on one of the committees that made a decision about his AC status, or because they allegedly knew that Kimble no longer posed a threat to institution safety. Kimble, however, has not alleged that these individuals actually made a decision about his placement that violated his constitution rights. Rather, the focus of Kimble's challenges to his AC hearings is that *Broadbent* prevented him from presenting evidence that would favor his placement in general population. Kimble does not include allegations suggesting that these other people took any actions to prevent Kimble from receiving a fair hearing on his placement. In other words, these additional defendants were not personally involved in the alleged constitutional violations. Given that personal involvement is a prerequisite to liability under 42 U.S.C. § 1983, *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (citing *Wilson v. Warren Cty.*, 830 F.3d 464, 469 (7th Cir. 2016), Kimble's inclusion of these additional defendants does not militate in favor of allowing him to proceed in a separate lawsuit.

Other new defendants had similarly limited involvement in Kimble's AC placement throughout the years, but Kimble's allegations do not support a claim under § 1983. Indeed, defendants Jaeger, Jess, Hompe, Davidson, and O'Donnell appear to have either handled one of Kimble's grievances or received a communication from Kimble in which Kimble was challenging the decisions related to his continued placement in AC placement. Yet ruling

against a prisoner on an inmate complaint does not qualify as personal involvement in a constitutional violation, and it is not sufficient to state a claim. *McGee v. Adams*, 721 F.3d 474, 485 (7th Cir. 2013); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *see also Owns v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievances procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of Owen's grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim.") Therefore, Kimble's allegations implicating these new defendants do not weigh in favor of allowing him to proceed in this lawsuit.

Another group of defendants – Fuchs, Percy, Clements and Larson – appear to have been named because of their supervisory positions within the Wisconsin Department of Corrections. A supervisor cannot be held liable under § 1983 solely for being a supervisor. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) (rejecting § 1983 actions against individuals merely for their supervisory role of others). Rather, "for a supervisor to be liable, they must be 'personally responsible for the deprivation of the constitutional right.'" *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (quoting *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). To establish personal involvement, the supervisor must "'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'" *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988)). Because Kimble has not alleged that any of these defendants was personally aware of the allegedly

9

unconstitutional decisions of the WSPF employees responsible for his placement in AC, there is no basis for Kimble to proceed against them under § 1983.

There are a two possible exceptions: Dr. Simcox and Broadbent. Kimble claims that Dr. Simcox falsified a report that Boughton then used to justify Kimble's continued placement on AC. However, even assuming, *arguendo*, that Simcox included false information in the report, this does not support a Fourteenth Amendment due process claim against *Simcox*, since Kimble does not suggest that Simcox was involved in the subsequent decisions about his placement. To the extent Kimble would wish to proceed against Simcox for his impact on the AC status hearing process, even false statements presented during that process would not implicate Kimble's due process rights. *See, e.g., Lagerstrom v. Kingston*, 463 F.2d 621, 624-25 (7th Cir. 2006) (due process rights are not violated if a false conduct report is filed). In any event, I already have allowed Kimble to pursue a claim related to Simcox's report: he's proceeding against Boughton on retaliation and due process claims for his alleged use of Simcox's evaluation for improper purposes in his '645 case. Kimble is free to pursue evidence and make arguments related to Simcox's allegedly false report about him, but his allegations in this lawsuit do not support a claim independent from the one he is already pursuing.

That just leaves Broadbent. Kimble alleges that Broadbent has been involved in his AC placement since 2016, and that Broadbent prevented him from presenting evidence that would support his removal from AC. Kimble claims that this took place during the December 2016, November 2017, May 2018, November 2018, January 2019 AC hearings, and also that Broadbent was involved in turning the review of his placement on AC status into a sham. The due process clause requires prison officials to conduct periodic reviews of whether prisoners placed in administrative segregation remain a threat to prison safety or security. *Isby v. Brown*,

856 F.3d 508, 524-25 (7th Cir. 2017) (discussing *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983)). And although due process may not require prison officials to submit additional evidence or statements to support the confinement decision, the "periodic review must still be meaningful and non-pretextrual." *Id.* (citing *Westefer v. Neal*, 682 F.3d 679, 686 (7th Cir. 2012) (citations omitted)). So, Kimble's proposed claim against Broadbent is cognizable. But in his '645 case, Kimble already is proceeding against defendants Boughton, Kartman, Gardner, Dickman, Winkieski, and Mink, on that same theory based upon the same allegedly cursory reviews of his placement. Therefore, to the extent Kimble now wants to pursue a claim against Broadbent, it belongs in his '645 case. It will be up to Kimble promptly seek leave to amend his complaint to include him as a defendant.

## ORDER

IT IS ORDERED that:

1) Plaintiff Bobby Kimble's motion to amend (dkt. 13) is GRANTED.

2) Kimble's amended complaint is DISMISSED without prejudice, as duplicative of *Kimble v. Boughton*, 19-cv-645-slc.

3) The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 13th day of October, 2020.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge